THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALERIE M. SMITH, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C12–1505–JCC <br><br> ORDER |

This matter comes before the Court on Defendant's second motion for summary judgment. (Dkt. No. 31). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.  **BACKGROUND**

As this Court has previously recounted, the instant matter is an insurance dispute arising out of an automobile collision. The essential facts are not in dispute. On June 21, 2007, Plaintiff Valerie Smith was injured in a collision due to the negligence of a third-party, Alexandra Bilas. (Dkt. No. 1.) Ms. Bilas was insured by Farmers with a liability limit of $100,000. (Dkt. No. 1.) At the time of the accident, Plaintiff was insured by State Farm with, among others, an Underinsured Motorist ("UIM") policy that included a $100,000 limit. (Dkt. No. 26 at 2.)

On June 4, 2010, Plaintiff filed a lawsuit in King County Superior Court against Ms. Bilas. (Dkt. No. 26 at 2.) Thereafter, on February 22, 2011, Defendant State Farm, Plaintiff's UIM insurer, moved to intervene in that lawsuit on the ground that "Plaintiff's counsel [had] indicated that the defendant's policy of insurance is or may be inadequate to cover the damages in this matter, necessitating State Farm to intervene because it would be bound by any judgment rendered by the court." (*Id.*) The trial court granted State Farm's motion and State Farm thus became a defendant in that lawsuit. Plaintiff then settled her claims with Ms. Bilas and moved to amend her complaint so as to assert claims directly against State Farm as a defendant. (Dkt. No. 32, Ex. 6.) The trial court also granted that motion.

Plaintiff filed her amended complaint against State Farm on December 19, 2011. In that complaint, Plaintiff sought recovery for breach of contract, alleging that State Farm failed to adequately respond to or evaluate Plaintiff's claims. (Dkt. No. 32, Ex. 7.) More specifically, Plaintiff alleged that she was injured in the June 21, 2007 automobile accident, for which Ms. Bilas was responsible due to her negligence. (*Id.*) Ms. Smith alleged that as a result of that accident, she suffered and continues to suffer both economic and non-economic damages. (*Id.* at ¶¶ 4.6–4.7.) Finally, Plaintiff alleged, even though State Farm had received documentation of the damages claimed by Plaintiff as a result of the automobile accident—including a police report, photographs of the vehicle damage, photographs of the Plaintiff in traction, medical records, medical bills, and a May 5, 2011 letter from a life care planner and the "Preliminary Life Care Plan from OSC Vocational Systems"—it denied Plaintiff's documented claim for damages on August 10, 2011. (*Id.* at ¶¶ 5.1–5.10.) Thus, Plaintiff alleges that State Farm breached its insurance contract with her when it "fail[ed] to fairly evaluate [Plaintiff's] claim" and "fail[ed] to offer a reasonable, fair or equitable amount under the underinsured policy." (*Id.* at ¶ 5.9.) Plaintiff alleged that damages "have and are continuing to result from this breach." (*Id.* at ¶ 5.8.)

Ms. Smith's state-court case was tried to a jury and she prevailed, resulting in an award of $22,517.53 for past economic damages, $119,876.90 in future economic damages, and

ORDER
PAGE – 2

$337,000.00 in past and future non-economic damages. (Dkt. No. 32, Ex. 8.) Because the UIM insurance policy with State Farm provided for a $100,000.00 policy limit, the award was adjusted to that amount along with $2,878.59 in costs, for a total judgment against State Farm of $102,878.59. (Dkt. No. 32, Ex. 9.) State Farm paid Ms. Smith the entire judgment amount the day after the verdict was rendered.

After the verdict, Ms. Smith moved to amend her complaint, proposing to add Consumer Protection Act, bad faith, negligence, and Insurance Fair Conduct Act claims. (Dkt. No. 32, Ex. 10.) The proposed Second Amended Complaint was again based on State Farm's failure to fairly evaluate and pay Ms. Smith's claim arising from the same automobile accident. (*Id.*) Indeed, as Plaintiff's motion indicated, her counsel had informed State Farm on multiple occasions—May 2, July 8, and August 2, 2011—that Ms. Smith would bring bad faith claims against State Farm if it failed to settle for the full policy limit of $100,000. (*Id.*) The trial court denied Ms. Smith's motion, citing a lack of appellate authority to permit such an amendment and prejudice to the defendant. (Dkt. No. 32, Ex. 11.) Ms. Smith did not appeal that ruling. Instead, Plaintiff filed the instant lawsuit in King County Superior Court, which Defendant State Farm subsequently removed to this Court. (Dkt. No. 1.) Plaintiff's instant complaint contains similar claims as contained in the proposed Second Amended Complaint: breach of contract, bad faith, negligence, Consumer Protection Act ("CPA"), and an Insurance Fair Conduct Act claim. (Dkt. No. 1, Ex. 2.) This Court dismissed the named "DeWaard defendants" upon the parties' agreed motion and granted Defendant's first motion for summary judgment on Plaintiff's Insurance Fair Conduct Act ("IFCA") claim. (Dkt. Nos. 18, 30.) The remaining claims are thus Plaintiff's breach of contract, bad faith, negligence, and CPA claims.

To support these causes of action, Plaintiff alleges in relevant part that State Farm unreasonably refused to properly evaluate and settle her claim. Specifically, Ms. Smith asserts that on August 2, 2011, State Farm notified her that it had completed its claim evaluation and declined to make any offer of payment under the policy, having concluded that Ms. Smith was

fully compensated by her recovery from the negligent driver's insurer. (Dkt. No. 1, Ex. 2 ¶ 2.11.) Prior to this response from State Farm, Ms. Smith alleges that she had attempted to settle her UIM claim with State Farm on three occasions—May 11, July 7, and August 2, 2011. (*Id.*) In doing so, Plaintiff "notified State Farm that its failure to settle for the UIM policy limit would constitute bad faith[.]" (*Id.*) Plaintiff further alleges that at that time, by which State Farm had not yet been named in her amended complaint as the direct defendant, State Farm "had not retained an expert witness, had not retained an expert life care planner, had not deposed plaintiff [], had not deposed or interviewed any of plaintiff Valerie Smith's treating doctors, had not deposed or interviewed any of plaintiff['s] expert witnesses, and had not deposed or interviewed any of plaintiff['s] lay witnesses." (*Id.*)

Additionally, Plaintiff's instant complaint alleges that Defendant failed to settle or otherwise support its evaluation positions after the August 2011 rejection letter. Specifically, Plaintiff alleges that Defendant unreasonably opposed her motion for summary judgment in the state-court lawsuit without presenting evidence from any qualified expert to dispute the causation, reasonableness, or relationship of the past and future medical care documented in her previously provided life-care plan, and had not at that time deposed or otherwise interviewed any of plaintiff's previously disclosed witnesses. (Dkt. No. 1, Ex. 2 ¶ 2.14.) Plaintiff's complaint also alleges that in the ten days prior to February 17, 2012, the date of trial in the state-court action, State Farm never offered Plaintiff any settlement. On February 17, 2012, Plaintiff alleges, State Farm offered Ms. Smith $10,000 to settle her UIM claim after mediation, and midway through trial, on March 5, 2012, State Farm offered to settle for $30,000. (Dkt. No. 1, Ex. 2 ¶ 2.16.) Finally, Plaintiff states that State Farm never presented any medical testimony during its case in chief to rebut Plaintiff's own expert evidence. (*Id.* at ¶ 2.17.)

Defendant now moves for summary judgment on the basis that Plaintiff's four remaining claims—breach of contract, bad faith, negligence, and Consumer Protection Act violations—are barred under the doctrine of *res judicata* because Plaintiff either brought, or could have brought,

ORDER
PAGE – 4

each of these claims against State Farm in the underling litigation. For the reasons explained below, the Court agrees with State Farm.

## II. DISCUSSION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making such a determination, the Court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–50 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non–moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### A. *Res Judicata*

In Washington, "[f]iling two separate lawsuits based on the same event—claim splitting—is precluded[.]" *Ensley v. Pitcher*, 222 P.3d 99, 102 (Wash. App. 2009). The judicially created doctrine of *res judicata* "rests upon the ground that a matter which has been litigated, or on which there has been an opportunity to litigate, in a former action in a court of competent jurisdiction, should not be permitted to be litigated again. It puts an end to strife, produces certainty as to individual rights, and gives dignity and respect to judicial proceedings." *Id.* (citing *Marino Prop. Co. v. Port Comm'rs*, 644 P.2d 1181 (Wash. 1982)). As Washington courts have explained, the "general rule is that 'if an action is brought for part of a claim, a judgment

obtained in the action precludes the plaintiff from bringing an action for the residue of the claim.'" *Karlberg v. Otten*, 280 P.3d 1123, 1130 (Wash. App. 2012) (citing *Landry v. Luscher*, P.2d 1274, *review denied*, 989 P.2d 1140 (1999)). Thus, "[a]ll issues which might have been raised and determined are precluded." *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 868 (9th Cir. 1995) (applying Washington law); *see Loveridge v. Fred Meyer, Inc.*, 887 P.2d 898, 900 (Wash. 1995) (en banc).

Application of *res judicata* under Washington law requires identity between a prior judgment and a subsequent action as to (1) persons and parties, (2) causes of action, (3) subject matter, and (4) the quality of persons for or against whom the claim is made.[1] *Karlberg*, 280 P.3d at 1130. *Res judicata* also requires a final judgment on the merits. *Id.* (citing *Pederson v. potter*, 11 P.3d 833 (2000)). As the Ninth Circuit has explained, however, Washington has applied the aforementioned criteria in a variety of ways, and "[i]t is not necessary that all four factors favor preclusion to bar the claim." *Codispoti*, 63 F.3d at 868. Rather, "[w]hile the rule is universal that a judgment upon one cause of action does not bar suit upon another cause which is *independent* of the cause which was adjudicated, it is equally clear that *res judicata* applies to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Id.* (citations omitted).

In the instant matter, it is largely undisputed that factors one, three, and four favor preclusion. The state court action was between Ms. Smith and State Farm, involved State Farm's failure to pay her upon demand benefits due under her UIM policy as a result of the automobile accident with Ms. Bilas, and the "quality of persons" for and against whom the claims are made is the same as the underlying suit. *See Codispoti*, 63 F.3d at 867. Accordingly, of the factors at issue, the parties dispute only whether there exists an identity of "causes of action." In

---

[1] As both parties recognize, this Court looks to the law of the forum state to determine the preclusive effect of a state court judgment. *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1031 (9th Cir. 2005). Accordingly, the Court applies Washington law in ruling on Defendant's motion for summary judgment.

ORDER
PAGE – 6

determining whether a concurrence of identity exists between the causes of action, the Washington courts consider the following flexible set of factors:

> (1) [W]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Energy Northwest v. Hartje*, 199 P.3d 1043, 1048 (Wash. App. 2009) (citing *Rains v. State*, 674 P.2d 165 (Wash. 1983) (en banc)); *accord Sewer Alert Committee v. Pierce County*, 791 F.2d 796, 798–99 (9th Cir. 1986) (applying Washington law on *res judicata*). The final consideration—whether the two suits arise from the same transactional nucleus of facts—is "the most important" consideration in determining whether the causes of action are identical. *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982) *cert. denied*, 459 U.S. 1087 (1982) (cited in *Rains*, 674 P.2d at 168)). As discussed above, *res judicata* does not merely prohibit a party from raising identical legal theories; rather, parties may not raise new legal theories based upon the same transactional nucleus of facts that could have been raised in the original action. *Sound Built Homes, Inc. v. Windermere Real Estate/South, Inc.* 72 P.3d 788, 796 (Wash. App. 2003) (collecting cases and noting that the "Washington Supreme Court has applied [the transactional view] for decades"); *see* Restatement (Second) of Judgments § 24 cmt. c.

Here, it is clear that Plaintiff's claims arise from the same transactional nucleus of facts, seek to redress the same wrong, and would involve presentation of substantially the same evidence as her previous breach of contract action. Indeed, both complaints allege that Ms. Smith was involved in an automobile accident caused by the negligence of Ms. Bilas; that Ms. Smith was damaged in an amount that exceeds the award to which she was entitled and/or recovered under Ms. Bilas' insurance; and that after tendering her claim to State Farm for UIM policy benefits, State Farm refused to pay her even though it had not conducted the appropriate investigation to determine the amount of her claim. (*Compare* Dkt. No. 32, Ex. 7 ¶¶ 4.1–5.10

*with* Dkt. No. 1–2, ¶¶ 2.1, 2.7–7.3.) In order to prove her instant claims—one of which, the Court notes, is an identical breach of contract claim—Plaintiff would again have to establish that Ms. Bilas was negligent in causing the automobile accident and that Plaintiff was injured in a certain amount by that accident so as to demonstrate that State Farm's decision not to pay UIM proceeds was unreasonable and in bad faith. Indeed, Plaintiff acknowledges this in her own brief. (*See* Dkt. No. 33 at 16.) Further, all of Plaintiff's claims revolve around the same basic theory in that she specifically alleges in both actions that State Farm did not conduct the necessary investigation in order to determine that she was not entitled to UIM benefits. Whether by a breach of contract claim only or a breach of contract claim coupled with bad-faith tort and statutory claims, Plaintiff seeks redress for the same wrong: State Farm's refusal to provide her with the full limits of her UIM policy. Accordingly, the Court finds that application of basic Washington *res judicata* principles make clear that Plaintiff's instant claims are precluded.

While Washington courts have not applied *res judicata* to scenarios identical to that at hand—namely, when a plaintiff attempts to bring a subsequent bad faith insurance action following a UIM breach of contract action—numerous other courts, which also apply the "transactional view," have encountered such attempts. Such subsequent bad faith actions have been routinely barred under the doctrine of *res judicata* where the bad faith action is based on the same failure to pay UIM benefits that was the subject of the underlying UIM breach of contract suit. *See Rawe v. Lib. Mut. Ins. Co.*, 462 F.3d 521, 528–29 (6th Cir. 2006) (applying federal *res judicata* principles); *Hamilton v. State Farm Fire & Cas. Co.*, No. 96–4141, 1997 WL 664772 (6th Cir. Oct. 23, 1997) (expressly applying Restatement § 24 "transactional approach" under federal *res judicata* principles); *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir. 1996) (applying "transactional approach" and barring subsequent bad faith claims that should have been raised in prior UIM case); *Stafford v. Jewelers Mut. Ins. Co.*, No. C12–0050, 2013 WL 796272, at *13 (S.D. Ohio March 4, 2013) ("[A] majority of the courts that have considered whether the facts underlying a breach of insurance contract claim and a bad-faith claim are

sufficiently related for purposes of *res judicata* have concluded that both claims arise out of an insurer's refusal to pay the insured the proceeds of the policy."); *Madison v. Nationwide Ins. Co.*, No. C11–0157, 2012 WL 2919373, at *2–3 (W.D. Ky. July 17, 2012) (bad faith claims that could have been brought when original UIM breach of contract action was filed held barred under *res judicata*); *Powell v. Infinity Ins. Co.*, 922 A.2d 1073 (Conn. 2007) (barring subsequent bad faith action); *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278 (Colo. App. 2006) (same).

For example, in *Porn v. National Grange Mut. Ins. Co.*, the First Circuit concluded that the plaintiff-insured's breach of contract UIM action was sufficiently identical to the subsequent bad faith cause of action such that *res judicata* precluded the plaintiff-insured from raising the bad faith claims in a subsequent suit. 93 F.3d at 34. There, the plaintiff was involved in an automobile accident, following which he made a claim to his insurer under his UIM policy. The insurer repeatedly declined to pay the proceeds under the policy, "remain[ing] steadfast in its refusal to pay" even in the face of threatening letters from the insured. 93 F.3d at 32. The plaintiff-insured initiated a lawsuit for breach of contract. The jury found that plaintiff was entitled to damages of $400,000, which was subsequently adjusted to reflect the insured's UIM policy limit. *Id.* Six months later, the plaintiff-insured commenced a second action against his insurer for breach of covenant of good faith, intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Connecticut Unfair Insurance Practices Act and Connecticut Unfair Trade Practices Act. *Id.* at 32–33. The district court granted the defendant-insurer's motion for summary judgment, finding that all of the plaintiff's claims were barred under the doctrine of claim preclusion. *Id.* at 33.

Applying the Restatement's three-factor transactional test, the Court of Appeals affirmed. The court first reasoned that "both the bad-faith claim and the contract claim derive from the same occurrence: [the insurance company's] refusal to pay [the insured] the proceeds of his underinsured motorist policy for the July 17, 1990 accident[,]" and explained that "although the

two claims present different legal theories, one sounding in contract and the other in tort, they both seek redress for essentially the same basic wrong[:] [the insured's] contract action sought redress for [the insurer's] refusal to pay the policy proceeds, while his bad-faith action sought redress for its unreasonable refusal to pay the proceeds." *Id.* at 34–35. Second, the court explained that a review of the complaints demonstrated that the two claims rested on a similar factual basis—both outlined the circumstances of the accident, the policy basics, and the insurer's conduct in refusing to pay—and would have formed a convenient trial unit for this reason. *Id.* at 35. Third, the court found that the parties' expectations factor also supported preclusion, explaining that "[w]hen he brought this contract suit[,] [the insured] knew the facts necessary for bringing a bad-faith claim. He knew [the insurer] refused to pay, he knew its alleged reasons for refusing, and he knew the extent of the delay in payment attributable to the refusal." *Id.* at 37. Further, the court expressly rejected the argument, which Plaintiff raises here, that the two actions would not involve presentation of substantially the same evidence. In doing so, the court called the plaintiff's definition of the transaction at issue "artificially narrow," and reasoned that evidence regarding the policy's terms, the underlying accident, and the circumstances of the insurer's refusal to pay would have to be presented on both claims, even if certain claims depended more heavily on various parts of the evidence. *Id.* at 35–37.

The instant scenario is materially indistinguishable from the *Porn* case. As noted above, Plaintiff's complaint alleges similar facts and seeks redress of the same basic wrong: State Farm's unwillingness to provide Plaintiff the full proceeds of her UIM policy. Plaintiff was provided a reason for the refusal—State Farm disputed the extent of her injury and thus, whether the amount of Plaintiff's damages warranted payment under the UIM policy—and Plaintiff was well aware of the facts underlying the automobile accident and State Farm's refusal when she initiated the instant action directly against State Farm. Indeed, as Ms. Smith's own motion recognizes, she had informed State Farm that bad faith claims would be forthcoming after it rejected her request for payment of the full policy limit. She was, in every sense, aware of the

ORDER
PAGE – 10

basis for the bad faith claims she now asserts. Further, in proving her claims in the instant lawsuit, Plaintiff would have to rely on largely the same evidence regarding the underlying accident, the damages to which she was entitled, and whether State Farm's decisions were reasonable in light of such evidence. Accordingly, for the same reasons that other courts have so concluded, the Court finds that Plaintiff's instant claims could have and should have been brought in the underlying lawsuit. Under Washington *res judicata* principles, Plaintiff's claims are therefore barred.

### B. Plaintiff's Additional Arguments

Plaintiff raises a host of additional arguments as to why the Court should not preclude her instant claims based on *res judicata*. Notably, Plaintiff does not devote substantial time to arguing that the *res judicata* factors favor her position. Rather, she primarily raises collateral arguments that the doctrine should not apply in this case even if the factors would normally favor its application. Specifically, Plaintiff asserts that (1) her claims were expressly reserved; (2) that State Farm consented to or "acquiesced in" splitting the claims; (3) Defendant should be judicially estopped from asserting inconsistent positions; (4) that her bad faith and Consumer Protection Act claims were not yet ripe; and (5) that Defendant should be barred from invoking *res judicata* because it benefitted from the absence of the bad faith claims. (Dkt. No. 33 at 5.) The Court addresses each argument in turn.

#### 1. Reservation and Waiver by Acquiescence

First, Plaintiff argues that "the parties agreed [that] the [bad faith] claims were reserved" on the record in the underlying state court suit and that "the Trial Court did explicitly reserve the issue of bad faith" when it denied Plaintiff's untimely and unsupported motion to amend her complaint *after* the verdict had been returned. (Dkt. No. 33 at 8.) To support this argument, Plaintiff directs the Court to an on-the-record exchange in which the parties were discussing State Farm's set-off defense. Plaintiff's counsel described the matter as "a bad faith case" and explained that she needed a "true value without respect to these policy limits" for potential bad

faith claims. (Dkt. No. 34–4 at 62.) Defense counsel responded, stating that State Farm agreed to stipulate to the $110,000 set-off at issue, and further commented that the instant complaint did not allege bad faith claims, which could be addressed later. (*Id.* at 62.) Plaintiff also asserts State Farm "consented to or acquiesced in splitting the claim." (Dkt. No. 33 at 10.) Upon review, the Court is not so persuaded.

As the parties each recognize, *res judicata* does not apply where a plaintiff's right to recover damages is "plainly reserved from adjudication." *Cummings v. Guardianship Services of Seattle*, 110 P.3d 796, 803 (Wash. App. 2005). Indeed, the Restatement makes clear that where "a defendant consents, in express words or otherwise, to the splitting of the claim," *res judicata* has no application. Restatement (Second) of Judgments § 24 cmt. a. However, Washington courts have also held that "waiver by acquiescence," as opposed to that by express reservation, can occur only if both lawsuits are simultaneously pending. *Karlberg v. Otten*, 280 P.3d 1128, 1129 (Wash. App. 2012); *Landry v. Luscher*, 976 P.2d 1274, 1279 (Wash. App. 1999).

Here, Plaintiff overstates the significance of the parties' one-line exchange. The parties were not discussing whether Plaintiff's bad-faith claims should be reserved for the future, and to suggest otherwise is to take the quote vastly out of context. As Defendant notes, the only "agreement" reached was involved whether the jury would be informed about the policy set-off limits. Indeed, defense counsel's statement—that bad faith had not been *alleged* was in fact true and a warranted retort to the suggestion of Plaintiff's counsel that the case, as it then existed based on the claims Plaintiff had chosen to bring, was a bad faith case. Indeed, the Court notes that Plaintiff's suggestion that the first case was a "bad faith case" makes clear that Plaintiff knew of the potential bad faith claims it could have pursued at that time. Lastly, Plaintiff's suggestion that State Farm acquiesced in claim splitting is similarly unpersuasive. As Defendant points out, "waiver by acquiescence" can occur only where the actions proceed simultaneously. Such as not the case here. *See Landry*, 976 P.2d at 1279 (defendants "could not waive the defense of claim splitting because [plaintiffs'] suits were not pending at the same time").

### 2.     Judicial Estoppel

Judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Here, Plaintiff argues that the doctrine of judicial estoppel should preclude Defendant from raising the affirmative defense of *res judicata*. While Plaintiff fails to state which "two contentions" are "completely inconsistent," the Court construes Plaintiff's argument to be that because State Farm argued that it would be prejudiced by a post-verdict amendment of Plaintiff's complaint in the underlying suit—due to the introduction of "new" issues involving bad faith after the breach of contract claim had already been litigated—it may not now urge that Plaintiff's claims should have been previously brought. The Court is not persuaded.

In arguing against Plaintiff's untimely attempt to amend her complaint after the jury had already rendered a verdict in her favor, Defendant stated that it would be prejudiced by the addition of "new" bad faith claims—*i.e.*, claims that had not previously been alleged. At no point did Defendant assert that it would not raise a *res judicata* defense to any future attempt to bring such claims. Rather, Plaintiff again construes Defendant's arguments out of context. The fact remains that Plaintiff was dilatory in seeking to amend her complaint to add claims she knew existed. By bringing a successive lawsuit, Plaintiff faces a similar hurdle to that she faced in her untimely attempt to amend claims in the first lawsuit—namely, that State Farm renews its argument that bringing bad faith claims after the initial UIM contract claims were litigated works to its detriment. *Res judicata* exists to protect defendants from such prejudice. State Farm's previous argument that it would be prejudiced by Plaintiff's untimely attempt to raise new claims does not, contrary to Plaintiff's suggestion, constitute the type of position or agreement to which Defendant should be bound in subsequent lawsuits. If anything, State Farm's positions were consistent in that it alleges prejudice due to Plaintiff's failure to bring her related claims together.

//

### 3. Ripeness

Plaintiff next makes two arguments regarding the ripeness of her bad faith claims. First, Ms. Smith suggests that because her IFCA and CPA claim under WAC 284–30–330(7), which prohibits an insurer from compelling an insured to submit to litigation by offering "substantially less than the amount ultimately recovered," would not be ripe until a verdict was reached on her UIM breach of contract claim, such claims cannot be precluded under the doctrine of *res judicata*. Second, Plaintiff cites Florida state-court decisions for the proposition that a bad faith action is not ripe until a verdict or settlement is reached that implicates the UIM coverage at issue. (Dkt. No. 33 at 12 (citing *Vest v. traveler Ins. Co.*, 753 So.2d 1270 (Fla. 2000) and *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289 (Fla. 1991)). Upon review, the Court is not persuaded that either argument saves Plaintiff's claims.

First, as Defendant notes in its reply brief, Washington law does not track Florida law in requiring a verdict on a breach of contract claim as a condition precedent to the pursuit of a bad-faith claim. (Dkt. No. 37 at 9); *see Porn*, 93 F.3d at 36 (distinguishing Florida case law and rejecting argument that *res judicata* was inapplicable on ripeness grounds). Instead, Washington courts have repeatedly permitted bad faith actions to proceed absent a successful contract claim. *See*, *e.g.*, *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (en banc) (insured may bring a CPA claim even if no duty to settle, indemnify, or defend exists); *Coventry Assoc's v. Am. States Ins. Co.*, 961 P.2d 933, 936–37 (Wash. 1998) ("We hold an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA regardless of whether the insurer was ultimately correct in determining coverage did not exist."). In light of this case law, the Court rejects Plaintiff's argument that her bad faith claims could not have been raised in the underlying issue on ripeness grounds.

Second, the Court is not persuaded by Plaintiff's argument that because a verdict amount is necessary to render some of her claims "ripe," none of her claims should be precluded under

the doctrine of *res judicata*. Even assuming Plaintiff's argument is correct that a verdict amount is required for certain of her claims, bifurcation of the claims would have resolved any and all issues of possible prejudice and ripeness. Indeed, because insurance cases involving both contract and bad-faith claims are often bifurcated, the Court is hard-pressed to accept Plaintiff's suggestion that insured-plaintiffs would be placed into a situation of raising certain bad-faith claims in the initial suit to avoid preclusion and subsequently bringing an additional bad-faith suit. As discussed above, the facts of the case make clear that Plaintiff could have and should have raised her bad faith claims in the underlying action and the parties could, if necessary, have sought to bifurcate the case. Accordingly, the Court declines to accept Plaintiff's ripeness arguments.

### 4.   Defendant's Benefit in the Underlying Proceeding

Finally, Plaintiff argues that "*res judicata* may not operate . . . if the matter's omission from the prior proceeding actually benefitted, rather than vexed, the party now purporting to rely on *res judicata*." *Kelly–Hansen v. Kelly–Hansen*, 941 P.2d 1108, (Wash. App. 1997). In stating this rule, the Washington Court of Appeals cited *Howell v. Hunters Exchange State Bank*, which explained the basic proposition that the purpose of the "rule that a party may not split a single cause of action" is that it "protects the defendant against unnecessary vexation, and avoids the costs and expenses incident to numerous actions." 270 P. 831, 832 (Wash. 1928); *see also State v. Superior Court for Ferry County*, 261 P. 110, 111 (Wash. 1927) (same). Because State Farm "would not allow admission of evidence as to its claim practices and valuation of the claim in front of the jury determining the Plaintiff's personal injuries," Plaintiff reasons, State Farm must have benefitted from not having to defend against her bad faith claims in the underlying suit. (Dkt. No. 33 at 15.)

Plaintiff's argument is flawed. While State Farm may not have wanted Plaintiff to introduce such evidence, she would have every right to introduce bad faith evidence to a jury had Plaintiff actually alleged bad faith claims. If bifurcation became necessary to protect Defendant

ORDER
PAGE – 15

from prejudice, that was a viable option. However, the need for bifurcation does not dispose of the fact that Plaintiff knew about her possible bad faith claims but failed to raise them in the underlying lawsuit. Were the Court to accept Plaintiff's argument—that an insured-plaintiff's failure to raise bad faith claims she could and should have raised in her first lawsuit "benefitted" the defendant and thus precludes application of the doctrine of *res judicata*—the Court would effectively render the doctrine meaningless, for every defendant "benefits" from not having to defend against additional claims. However, the Court is not willing to accept such an invitation. Accordingly, Plaintiff's arguments fail to convince the Court that *res judicata* is inapplicable in the instant matter.

## III. CONCLUSION

As explained above, Ms. Smith's additional claims are barred under the doctrine of *res judicata*. Plaintiff could have and should have raised her bad faith claims—and did in fact bring her breach-of-contract claim—in the underlying lawsuit. Accordingly, Defendant's motion for summary judgment (Dkt. No. 31) is hereby GRANTED.

DATED this 11th day of April 2013.

*[signature]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE